UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BRIFEN USA, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-22-200-G** |
| | ) | |
| **BRIGGS BROTHERS ENTERPRISES** | ) | |
| **CORPORATION, and** | ) | |
| **RLI INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Now before the Court is a Motion to Dismiss (Doc. No. 13) filed by Defendant Briggs Brothers Enterprises Corporation ("Briggs"). Briggs seeks dismissal of this action under Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure, or, alternatively, transfer of venue pursuant to 28 U.S.C. § 1404(a). Plaintiff Brifen, USA Inc. ("Brifen") has responded in opposition (Doc. No. 19).

I.   BACKGROUND

Brifen is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma. *See* Compl. (Doc. No. 1) ¶ 1. Briggs is a Georgia corporation with its principal place of business in Atlanta, Georgia. *Id.* ¶ 2.

In 2021, Brifen and Briggs entered into a contractual relationship, requiring among other things that Brifen would sell goods and materials to Briggs. *See id.* ¶ 6; Def.'s Mot. (Doc. No. 13) at 7-8. The goods sold were to be used in connection with the construction of a wire rope barrier system in Georgia to be built pursuant to a contract between Briggs

and the Georgia Department of Transportation (the "GDOT Project").  *See id.* ¶ 7.  In connection with the GDOT Project, Defendant RLI Insurance Company ("RLI") issued a bond to assure payment to materialman suppliers, including Brifen.  *Id.* ¶ 8.  Brifen alleges that it "performed all aspects of its obligations under both contracts including supplying all materials, which on information and belief ha[ve] been used in or installed on the GDOT Project" and states that "Briggs has failed and refused to pay any portion of the contract price."  *Id.* ¶¶ 10-11.

Brifen initiated the instant diversity action on March 10, 2022, bringing claims of breach of contract and unjust enrichment against Briggs and seeking foreclosure of the bond provided by RLI.  *See id.* ¶¶ 14-17.  Twenty-one days later, Briggs filed a civil action in the Superior Court of Fulton County, Georgia, concerning the same transactions as are at issue in this lawsuit.  Def.'s Mot. at 9.  Brifen later removed that case to the United States District Court for the Northern District of Georgia.  *See id.* at 10.  The Northern District of Georgia subsequently transferred that case to this Court on Brifen's motion pursuant to the "first-filed rule."  *See Briggs Bros. Enters. Corp. v. Brifen USA, Inc.*, CIV-22-1057-G.[1]

Briggs now seeks dismissal of this action under Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure, or, alternatively, transfer of venue pursuant to 28 U.S.C.

---

[1] On December 16, 2022, Brifen filed a "Supplemental Response" (Doc. No. 23), advising the Court that the Northern District of Georgia had transferred the related case to this Court and attaching the relevant order.  Briggs and RLI then moved to strike the Supplemental Response pursuant to Local Civil Rule 7(i).  *See* Doc. No. 24.  The Court DENIES Defendants' Motion to Strike (Doc. No. 24).  Notwithstanding its title, Brifen's filing is more properly characterized as a notice to the Court, as it contains no further substantive argument and simply advises the Court of a relevant factual development in this litigation.

§ 1404(a) back to the Northern District of Georgia and consolidation of both cases.  *See*

Def.'s Mot. at 6.

II.  STANDARDS GOVERNING PERSONAL JURISDICTION

      Citing Rule 12(b)(2), Briggs contends that it is not subject to personal jurisdiction

in this Court.  When the Court's jurisdiction over a defendant is contested, the plaintiff

bears the burden of proving that personal jurisdiction exists.  *See Wenz v. Memery Crystal*,

55 F.3d 1503, 1505 (10th Cir. 1995); *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th

Cir. 2004).  In the preliminary stages of litigation, however, "the plaintiff's burden is light."

*AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008).  Where,

as here, a court considers a pretrial motion to dismiss for lack of personal jurisdiction

without conducting an evidentiary hearing, "the plaintiff need only make a prima facie

showing of personal jurisdiction to defeat the motion."  *Id.* at 1056-57 (citing *OMI

Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)).  For

purposes of the plaintiff's prima facie case, the allegations in the complaint are accepted

as true to the extent they are uncontroverted by the defendant's affidavits.  *Shrader v.

Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011).  "If the parties present conflicting

affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's

prima facie showing is sufficient notwithstanding the contrary presentation by the moving

party."  *Wenz*, 55 F.3d at 1505 (internal quotation marks omitted).

      To establish personal jurisdiction over a nonresident in a diversity action, a plaintiff

"must demonstrate that jurisdiction is proper under the laws of the forum state—in this

case Oklahoma—and that the exercise of jurisdiction complies with the Due Process

Clause of the Fourteenth Amendment." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020).  Oklahoma has enacted a "long-arm" statute that authorizes its courts to exercise jurisdiction to the maximum extent permitted by the Constitution.  *See id.* at 1228-29; *see* Okla. Stat. tit. 12, § 2004(F).  As relevant here, the Court's inquiry is reduced to a single question: whether the Court's exercise of jurisdiction over Defendant Briggs is consistent with constitutional due process.  *See id.* at 1229; *Shrader*, 633 F.3d at 1239.

The due process standard requires that the defendant "purposefully established minimum contacts within the forum state" and that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice."  *Dental Dynamics*, 946 F.3d at 1229 (internal quotation marks omitted).  The "minimum contacts" standard may be satisfied by showing that the court could maintain either general or specific jurisdiction over the defendant.  *See OMI Holdings, Inc.*, 149 F.3d at 1090-91.

The only basis of jurisdiction over Briggs reasonably implicated by the factual allegations of Brifen's Complaint is specific jurisdiction.  Specific jurisdiction "requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities."  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  The first element can take various forms.  *Id.*  "A contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum."  *Benton*, 375 F.3d at 1077.  "However, 'with respect

4

to interstate contractual obligations . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.'" *Id.* (omission in original) (quoting *Burger King,* 471 U.S. at 473). "In a contract case, relevant factors for assessing minimum contacts include 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Id.* (quoting *Burger King*, 471 U.S. at 479).

III.   BRIGGS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Briggs asserts that it lacks sufficient minimum contacts with the State of Oklahoma to allow this Court to exercise personal jurisdiction over Briggs. Additionally, Briggs argues that even if the Court were to find sufficient minimum contacts, it would offend traditional notions of fair play and substantial justice for this Court to exercise personal jurisdiction over Briggs. *See* Def.'s Mot. at 15-16.

Brifen and Briggs have each submitted exhibits in support of their jurisdictional arguments. The Affidavit of Terry Briggs, President of Briggs Brothers Enterprises Corporation, represents that Briggs is a Georgia corporation headquartered in Smyrna, Georgia, and that Briggs has neither done business in nor solicited business from Oklahoma. *See* Briggs Aff. (Doc. No. 13-1) ¶¶ 2-6. Mr. Briggs' Affidavit further describes

the circumstances surrounding the formation of the contracts and the alleged breach, stating

the following:

1) "Briggs Brothers dealt almost exclusively with Richard Butler when organizing the project with Brifen USA, Inc."; and

2) "All communication regarding the purchase of materials with Brifen was electronic or in person in Georgia with Mr. Butler.  No one from Briggs Brothers traveled to the state of Oklahoma to meet with Brifen until after the alleged breach occurred [when] I met with Steve Wells."

*Id.* ¶¶ 7-8.[2]

The Affidavit of Steve E. Wells, President of Brifen USA, Inc., submitted with

Brifen's Response, makes the following representations:

1) The quote Briggs received from Brifen for the materials stated that the materials were to be shipped from Oklahoma.  Wells Aff. (Doc. No. 19-1) ¶ 4.

2) Briggs submitted its credit application to Brifen in Oklahoma.  *Id.* ¶ 5; *see also* Pl.'s Resp. Ex. 2 (Doc. No. 19-2).

3) Briggs paid an invoice from Brifen by check mailed to Brifen in Oklahoma.  Wells  Aff. ¶ 6; *see also* Pl.'s Resp. Ex. 3 (Doc. No. 19-3).

4) The parties entered into a second contract providing that Briggs would rent a swaging machine from Brifen to complete work on the GDOT Project, and the swaging machine and a reel rack were shipped to Briggs from Oklahoma.  Wells Aff. ¶ 10.

5) On January 14, Briggs contacted Brifen to ask if Terry Briggs could meet with Brifen about payment for the materials provided by Brifen to Briggs. Terry Briggs then traveled to Oklahoma City on January 17, 2022, to meet with Brifen to discuss payment and to order additional material needed to finish the GDOT Project.  *Id.* ¶¶ 14-15.

6) At the time of the meeting in Oklahoma City, Briggs had not yet paid in full for the materials received and had not returned or paid for the swaging machine.  *See id.* ¶ 15.  Mr. Wells represents that during the meeting, "Mr. Briggs stated that Briggs would pay for the additional materials in full

---

[2] Richard Butler is an employee of Brifen who resides in Florida.  *See* Def.'s Mot. at 7.

and offered to pay $100,000 toward the current balance on the contract." *Id.*

7) Briggs later agreed to pay for the additional material needed for the GDOT Project through an escrow account located in Oklahoma prior to the additional material being shipped from Oklahoma to Georgia. *Id.* ¶ 17. Once Briggs received the additional materials, the payment for the additional materials was released to Brifen in Oklahoma. *Id.*

A.   *Minimum Contacts*

Briggs represents that its "only contact with Oklahoma was through Brifen and only in the manner of requesting a bid, purchasing materials, and paying for them." Def.'s Mot. at 14. Briggs likens this transactional relationship to "buying something off Amazon" and argues that "[c]ertainly, an Amazon buyer is not subjected to availing themselves of the seller's state's laws simply because they bought something, unless there is a contractual provision to the contrary." *Id.*

Based on the allegations in the Complaint and Brifen's Affidavit, the Court finds that Brifen has made a prima facie showing that Briggs has had sufficient minimum contacts with the State of Oklahoma to subject Briggs to personal jurisdiction in that State. The parties' relationship here is more than a single-contact purchase. The quote Briggs received for the materials stated that the materials were to be shipped from Oklahoma, Briggs submitted its credit application to Brifen in Oklahoma, and Briggs paid an initial invoice from Brifen by check mailed to Brifen in Oklahoma. *See* Wells Aff. ¶¶ 4-6; Pl.'s Resp. Ex. 2; Pl.'s Resp. Ex. 3. Briggs then entered into a second contract with Brifen for a machine to be used on the GDOT project to be shipped from Oklahoma to Georgia. *See* Wells Aff. ¶ 10. When the payment dispute arose, Briggs' principal officer traveled to Oklahoma to discuss payment with Brifen and to order additional materials from Oklahoma

needed to finish the project.  *See id.* ¶¶ 14-15.  Briggs agreed to pay for these additional materials through an escrow account located in Oklahoma prior to the additional material being shipped from Oklahoma to Georgia.  *Id*. ¶ 17.

Examining the parties' course of dealing and payment negotiations as articulated in the affidavits and exhibits provided, and construing all factual disputes in favor of Brifen, the Court finds that Briggs reached out beyond Georgia and created a continuing relationship and obligations with Brifen, a citizen of Oklahoma.  *See Benton*, 375 F.3d at 1077 ("[P]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." (internal quotation marks omitted)).  Further, because Briggs allegedly did not satisfy its obligations arising from its activities in Oklahoma, Brifen has sufficiently demonstrated that its alleged injuries—Briggs' nonpayment for materials ordered from Oklahoma and nonpayment or nonreturn of the machine requested from Oklahoma—arose out of Briggs' forum-related activities.  Brifen has therefore sufficiently shown that Briggs "purposefully established minimum contacts within the forum state" as due process requires.  *Dental Dynamics*, 946 F.3d at 1229 (internal quotation marks omitted).

> B.    *Traditional Notions of Fair Play and Substantial Justice*

When considering whether the exercise of personal jurisdiction offends the traditional notions of fair play and substantial justice, the Court must consider whether the "exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case."  *Benton*, 375 F.3d at 1078 (quoting

*OMI Holdings*, 149 F.3d at 1091).  This reasonableness inquiry requires the Court to consider the following factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*OMI Holdings, Inc.*, 149 F.3d at 1095.  "The strength of these factors sometimes serve[s] to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.*  "Conversely, the factors may be so weak that even though minimum contacts are present, subjecting the defendant to jurisdiction in that forum would offend due process." *Id.*  The Court considers each factor in turn.

### 1.  Burden on the Defendant

Briggs argues that the burden of litigating this case in Oklahoma would be substantial as it is a Georgia company and all of its potential witnesses reside in Georgia. *See* Def.'s Mot. at 17.  In its Response, Brifen argues that Briggs is incorporated in and does business in several states, including Texas, Pennsylvania, and Louisiana. *See* Pl.'s Resp. at 15-16.  Further, Brifen alleges that when Terry Briggs asked to come to Oklahoma to discuss the contracts, Mr. Brifen stated that he would be coming from a Briggs office or project in Texas. *See* Wells Aff. ¶ 14.  Briggs does not refute these assertions.

Consequently, given that Briggs does business in multiple states, including states neighboring Oklahoma, and has demonstrated its ability to have its officers travel to Oklahoma to discuss business matters, the Court concludes that the burden upon Briggs of litigating this action in Oklahoma would not be substantial. *Cf. Benton*, 375 F.3d at 1079

9

(finding that the burden of litigating an action in Colorado would be substantial for a Canadian corporation). This factor weighs in favor of finding that the Court's exercise of personal jurisdiction over Briggs is reasonable.

### 2.    The Forum State's Interest in Resolving the Dispute

Briggs argues that the State of Georgia has a superior interest in adjudicating this action. *See* Def.'s Mot. at 17-18. Specifically, Briggs asserts that "the ultimate complaints of the parties originate from a Georgia government contract," that Georgia tax dollars are at issue, and that Georgia law would apply to the bond that Brifen invokes. *See id.* at 18.

But, as Brifen argues, this case concerns contracts between Brifen and Briggs, not Brifen, Briggs, and the State of Georgia. *See* Pl.'s Resp. at 16. The claims only appear to implicate Georgia's GDOT Project in the sense that the materials provided through the contracts were intended to be used on the GDOT Project. Further, Briggs has presented no authority supporting that the bond, which is a payment bond, must be foreclosed on in Georgia. *See id.* at 17. Additionally, Brifen contends that Oklahoma law would apply to the contract claim and its claim seeking foreclosure of the bond rather than Georgia law. *See id.* at 16.

At this juncture, the Court reaches no conclusion as to what law should apply to Brifen's claims. It is clear, however, that Oklahoma has at least as much of an interest in adjudicating this action as Georgia, as the contracts at issue concern materials shipped from

Oklahoma and payments to be made in Oklahoma.  This factor therefore does not heavily weigh in favor of either position.

>    3.    Plaintiff's Interest in Receiving Convenient and Effective Relief

Briggs argues that Brifen's interest in convenient and effective relief will not be diminished if this action is litigated in Georgia because: (1) Brifen, a recommended supplier to complete government contracts, should expect to litigate in Georgia; (2) Brifen seeks foreclosure of a bond associated with a Georgia contract; and (3) Brifen seeks to use Georgia law to redress its complaints.  *See* Def.'s Mot. at 19.  In its Response, Brifen argues that while it could seek relief in Georgia, it would be more convenient and effective for Brifen to pursue this lawsuit in Oklahoma "where all of its witnesses, with the exception of one, reside[]."  Pl.'s Resp. at 18.  Brifen also refutes that Georgia law applies to its claims and contends that regardless of where this action is brought, Oklahoma law should apply.  *See id*.  Again without deciding what law should apply to the claims, the Court agrees that it would be more convenient for Brifen to litigate this action in its home state and therefore concludes that this favor weighs in favor of finding that the Court's exercise of personal jurisdiction over Briggs is reasonable.

>    4.    The Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution of Controversies

"This factor asks 'whether the forum state is the most efficient place to litigate the dispute.'"  *Benton*, 375 F.3d at 1080 (quoting *OMI Holdings*, 149 F.3d at 1097).  "Key to the inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred,

what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *Id.* (internal quotation marks omitted).

As explained above, the parties disagree as to whether Georgia law or Oklahoma law should apply to Brifen's claims, and so applicable law is not a determinative factor. Further, the location of witnesses is not determinative either, as Briggs' witnesses are mostly located in Georgia and Brifen's witnesses are mostly located in Oklahoma. And, because the related case has been transferred to Oklahoma, there is no risk of piecemeal litigation to consider. What remains is that the wrong underlying this lawsuit occurred in Oklahoma when Briggs allegedly refused to make payment in Oklahoma for materials and equipment shipped from Oklahoma. Accordingly, this factor weighs in favor of finding that the Court's exercise of personal jurisdiction over Briggs is reasonable.

5.   The Shared Interest of the Several States in Furthering Fundamental Substantive Social Policies

"The fifth factor of the reasonableness inquiry 'focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations.'" *Benton*, 375 F.3d at 1080 (alteration in original) (quoting *OMI Holdings*, 149 F.3d at 1097). Briggs argues that this factor weighs against the Court's exercise of jurisdiction because (1) Briggs' contact with Oklahoma is "extremely limited," (2) Brifen chose to conduct business in Georgia, (3) Georgia law should govern, and (4) Georgia tax dollars are at issue. *See* Def.'s Mot. at 20.

As previously discussed, the Court has concluded that Briggs' contacts with Oklahoma are sufficient to satisfy due process' minimum contacts requirement. Again, the

parties dispute what law should apply in this case, and so what law applies to Brifen's claims is not a determinative factor in the present reasonableness inquiry. Further, just as Brifen chose to conduct business in Georgia when it submitted its bid, Briggs chose to conduct business in Oklahoma when it accepted that bid and entered into a transactional relationship with an Oklahoma supplier.

> In response to Briggs' assertion regarding Georgia tax dollars, Brifen argues:
>
> Georgia's tax dollars were undoubtedly paid to Briggs for its work on the contract. Those tax dollars are likely already in the hands of Briggs. It is the lack of payment by Briggs that is at issue, not the [State] of Georgia and not [its] tax dollars. Briggs['] failure to pay Brifen is covered by the payment bond that the Project required in order to separate the payment issues from the state of Georgia.

Pl.'s Resp. at 20. The Court agrees with Brifen's assessment. If Brifen's claims are successful, Briggs will be liable for damages, not the State of Georgia. Accordingly, Briggs has not demonstrated that the exercise of personal jurisdiction by Oklahoma affects the substantive social policy interests of other states or foreign nations, and therefore the final factor weighs in favor of Brifen's position.

### 6.   Conclusion

Considering the factors discussed above individually and in totality, Briggs has not established a "compelling case" that the exercise of jurisdiction by an Oklahoma court would be unreasonable. *Burger King*, 471 U.S. at 477. Accordingly, the Court concludes that the exercise of personal jurisdiction over Briggs comports with the Constitution's due process requirements and denies Brigg's request to dismiss pursuant to Rule 12(b)(2).

IV.   BRIGGS' MOTION TO DISMISS FOR IMPROPER VENUE OR, ALTERNATIVELY, TO TRANSFER VENUE

Briggs additionally argues that the Court should dismiss this action for improper venue under Federal Rule of Civil Procedure 12(b)(3).   *See* Def.'s Mot. at 20-22. Alternatively, Briggs requests that this action should be transferred to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).   *See id.*

A.   *Proper Venue*

Pursuant to 28 U.S.C. § 1406(a): "The district court of a district in which is filed a case laying venue in the wrong . . . district shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought."  28 U.S.C. § 1406(a).  "The plaintiff bears the burden of proving proper venue."  *Cox v. Mobilex USA*, No. CIV-16-6-M, 2016 WL 4920185, at *2 (W.D. Okla. Aug. 16, 2016) (R. & R.), *adopted*, 2016 WL 4916847 (W.D. Okla. Sept. 14, 2016); *see also Pierce v. Shorty Small's of Branson*, 137 F.3d 1190, 1192 (10th Cir. 1998).

When evaluating a motion to dismiss for improper venue, "'the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.'"  *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1352, at 324 (3d ed. 2004)). "[A] plaintiff may rest on the well-pled facts in the complaint to oppose a motion to dismiss for improper venue, but 'only to the extent that such facts are uncontroverted by defendant's' evidence."  *Id.* at 1260 (quoting *Pierce*, 137 F.3d at 1192).  The Court generally "may consider evidence outside the complaint such as a defendant's affidavits"

14

without converting the Rule 12(b)(3) motion to one for summary judgment. *Cox*, 2016 WL 4920185, at *2; *accord Pierce*, 137 F.3d at 1192 (affirming a Rule 12(b)(3) dismissal where the defendant presented affidavit evidence that controverted each of the statutory bases for venue and the plaintiff failed to present any evidence in response).

Briggs does not explain why the Western District of Oklahoma is an improper venue but instead asserts that "Georgia is the proper venue and Brifen certainly could have brought its causes of action against Briggs in that forum." Def.'s Mot. at 21-22. The relevant statute prescribes that venue is proper in the following judicial districts:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Venue, however, may properly lie in multiple judicial districts, and "a plaintiff may choose between" those districts. *Leroy v. Great W. United Corp.*, 443 U.S. 173, 185 (1979).

Here, Brifen asserts that "[v]enue is proper pursuant to [28 U.S.C. § 1391(b)(2)] within the Western District of Oklahoma, where the contracts were entered into, administered, and all payments were to be made." Compl. ¶ 5. Brifen also argues that "[t]he contract was made in Oklahoma with an Oklahoma company for the manufacture and supply of materials and equipment in and from Oklahoma." Pl.'s Resp. at 21. In the

absence of argument to the contrary, the Court agrees that "a substantial part of the events or omissions giving rise to the claim occurred" in the Western District of Oklahoma in satisfaction of 28 U.S.C. § 1391(b)(2).  Venue is therefore proper in the Western District of Oklahoma, and the Court will not dismiss this action pursuant to Rule 12(b)(3).

> B.   *Transfer of Venue*

Briggs alternatively seeks transfer of this case to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a) because Briggs argues that Georgia is a more convenient venue for this action.  *See* Def.'s Mot. at 21-22.  That statue provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought."  When considering whether to transfer an action under 28 U.S.C. § 1404(a), the Court weighs the following discretionary factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (alteration and internal quotation marks omitted).  "The moving party has the burden to show that the existing forum is inconvenient," and the plaintiff's choice of venue "is also given

considerable weight." *Tex. E. Transmission Corp. v. Marine Off.-Appleton & Cox Corp.*, 579 F.2d 561, 567 (10th Cir. 1978).

To satisfy the factors articulated above, Briggs reincorporates by reference its arguments regarding the reasonableness of the Court's exercise of personal jurisdiction. *See* Def.'s Mot. at 22. As previously explained, the Court has determined that it is reasonable to exercise personal jurisdiction over Briggs. For substantially the same reasons, the Court declines to transfer this case to the Northern District of Georgia under 28 U.S.C. § 1404(a).

Brifen chose to initiate this lawsuit in the Western District of Oklahoma, and the Court gives considerable weight to the plaintiff's choice of venue. Briggs has not advanced an argument regarding the cost of making the necessary proof, questions as to the enforceability of a judgment if one is obtained, relative advantages and obstacles to a fair trial, or difficulties that may arise from congested dockets. Brifen's witnesses are mostly located in Oklahoma, and Briggs' witnesses are mostly located in Georgia; therefore, the availability of witnesses does not favor one venue or the other. Further, the parties disagree as to whether Georgia law or Oklahoma law should apply to Brifen's claims, and so the factor addressing application of local law is not determinative.

Based on the argument presented, Briggs, the movant, has not shown that the convenience of parties and witnesses and the interests of justice support transfer of this

action to the Northern District of Georgia.  Accordingly, the Court will not disturb Brifen's choice of venue.

CONCLUSION

For the reasons explained above, Defendant Briggs' Motion to Dismiss (Doc. No. 13) is DENIED.  This matter shall be set on the Court's next regular docket for a status and scheduling conference.

IT IS FURTHER ORDERED that Plaintiff's Motion to Conduct Discovery (Doc. No. 21) is DENIED AS MOOT.  Defendants' Motion to Strike (Doc. No. 24) is DENIED.

IT IS SO ORDERED this 29th day of March, 2024.


_____
CHARLES B. GOODWIN
United States District Judge